**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

NANCY LEGG, Individually and as Administratrix )
of the Estate of Jeffrey Max Legg,            )
                                              )
                              Plaintiff,      )      Civil Action No.
                                              )      3:14-CV-838(DEP)
              v.                              )
                                              )
UNITED STATES OF AMERICA,                     )
                                              )
                              Defendant.      )
_____    )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**CROSS MOTION _IN LIMINE_**

Dated: May 23, 2016

                              By: Oliver N. Blaise, III, Esq.
                                  Bar Roll No. 302347

                                  Carla N. McKain, Esq.
                                  Bar Roll No. 516205

                                  Brian T. Sadonis, Esq.
                                  Bar Roll No. 303208

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.   INTRODUCTION ............................................................................... 1

II.  FACTUAL BACKGROUND .................................................................. 1

    A.  The FTCA Claim ........................................................................ 1

    B.  Federal Court Filings ................................................................. 5

    III. ARGUMENT .............................................................................. 9

    A.  This Court Maintains Jurisdiction Over Plaintiff's Claims of Malpractice ......... 10

        i.   The Plaintiff Properly Presented Her Administrative Claim ............... 14

        ii.  The Defendant Had Proper Knowledge of the Plaintiff's Claims ......... 17

    B.  Evidence of Mr. Legg's Prior Treatment is Admissible ........................... 19

    C.  The Plaintiff is Entitled to Amend Her Complaint ............................... 20

        i.   The Plaintiff is Entitled to Amend the Complaint to Allege the
            Deviations Identified by the Plaintiff's Experts ........................... 21

        ii.  The Plaintiff is Entitled to Amend the Complaint to Allege
            Loss of Consortium ...................................................... 24

IV. CONCLUSION ............................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Croman Corp. v. United States*, 94 Fed. Cl. 157 (2010) ........................................23-24

*GAF Corp. v. United States*, 818 F.2d 901 (D.C. Cir. 1987) .....................................11, 16-17

*Goodman v. United States*, 298 F.3d 1048 (9th Cir. 2010) .............................10, 17, 18, 19

*Hunter v. Veterans Admin. of U.S.*, No. 78-CV-321,
    1981 WL 380702 (N.D.N.Y. Jan. 7, 1981) ........................................21, 22

*Johnson by Johnson v. United States*,
    788 F.2d 845 (2d. Cir. 1986) ........................................10, 11, 12, 15-16

*Keene Corp. v. United States*, 700 F.2d 836 (2d Cir. 1983) .........................................11, 15

*LaBarre v. Werner Enterprises, Inc.*, No. 1:12-CV-1316(MAD),
    2015 WL 8056052 (N.D.N.Y. Dec. 4, 2015) ........................................24, 25

*Liff v. Schildkrout*, 49 N.Y.2d 622 (1980) ........................................24

*Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980) ........................................12, 13, 15, 19

*Sweeney v. Am. Registry of Pathology*,
    287 F.Supp.2d 1 (D.D.C. 2003) ........................................11, 16-17

**STATUTES**

28 U.S.C. § 2675 ........................................10, 11, 12, 16

28 U.S.C. § 2860(h) ........................................11

Fed. R. Civ. Pro. 15 ........................................1, 9, 21

**SENATE REPORTS**

S. Rep. No. 1327, 89th Congress, 2d Sess. 2 (1966) ........................................10-11, 16

## I. INTRODUCTION

Plaintiff Nancy Legg submits this memorandum of law in opposition to the defendant's motion *in limine*, which seeks to limit the evidence at trial to decedent Jeffrey Max Legg's outpatient mental health visit with psychiatrist Kim N.S. Duque, M.D. at the Syracuse Veterans Administration Medical Center (hereinafter "VAMC") on December 28, 2011.

The plaintiff further submits this memorandum in support of her cross motion to amend the complaint pursuant to Fed. R. Civ. Pro. 15.  Although it does not change or add to the substance of the plaintiff's allegations or legal theories, which are all identified in her December 18, 2013 Federal Tort Claims Act ("FTCA") administrative claim (hereinafter "FTCA claim"), she nevertheless provides the court with a redlined proposed amended complaint indicating that the alleged "additional" deviations from the standard of care and claim for loss of consortium are well within the facts and allegations contained in the FTCA claim, and do not prejudice the defendant or expand the scope of evidence to be presented to the Court.

## II. FACTUAL BACKGROUND

### A. The FTCA Claim

As noted above, plaintiff filed her FTCA claim with the Veterans Administration (hereinafter "VA") on or about December 18, 2013.  *See* Defense Ex. A; Defense Ex. B.  The FTCA  claim submission totaled 190 pages and was comprised of the following: two Standard Forms 95, one on behalf of the plaintiff in her individual capacity and one in her capacity as administratix of Jeffrey M. Legg's estate; all of Mr. Legg's VA medical records from 2007 through his last treatment on December 28, 2011; a detailed eight-

page narrative letter outlining Mr. Legg's military history and his care and treatment with the VA from 2007 through his death on January 3, 2012; a brief affidavit from a psychiatrist, Steven A. Fayer, M.D., with his opinion that Mrs. Legg had a colorable claim for malpractice based on Dr. Duque's treatment of Mr. Legg; Mr. Legg's death certificate, toxicology and autopsy reports; the plaintiff's affidavit regarding loss of services, guidance, and emotional distress; an expert report on lost earnings; photographs of Mr. Legg and his family; and a receipt for funeral expenses.[1]  Defense Ex. B, Dkt 47-4, p. 2.  The narrative letter identified the VA professionals who provided treatment to Mr. Legg on specific dates throughout that timeframe and also described the primary aspects of his treatment, and the gaps in his treatment.  Defense Ex. B, Dkt 47-4.

As described in the narrative letter and in the VAMC mental health treatment and medical records, Mr. Legg first presented to the VAMC on December 11, 2010 following a suicide attempt earlier that morning.  Defense Ex. B, Dkt 47-4.  Thereafter, he began treatment for post-traumatic stress disorder ("PTSD"), major depressive disorder ("MDD"), and other symptoms associated with an elevated risk of self-harm.  Defense Ex. B, Dkt 47-4.  The narrative letter specifically identified psychiatrists Robert Kotz, M.D.; Prashant Kaul, M.D.; Olumuyiwa Gay, M.D.; Kim N.S. Duque, M.D.; and therapist Gregory Moss, LCSW as the providers with whom Mr. Legg treated throughout 2011, along with the dates they treated him, when and what medications were prescribed and discontinued, and important portions of Mr. Legg's therapy sessions with Mr. Moss and

---

[1] Defense counsel only includes plaintiff's Forms 95 and the narrative letter as attachments to his motion *in limine*, however, the accompanying submission are listed on the first page of plaintiff's narrative letter. Dkt. 47-4, p. 2.

discussions with the psychiatrists.[2]  The details of Mr. Legg's visits from 2007, and from 2010 to 2011, were in the VA treatment records attached to the FTCA claims. Defense Ex. B, Dkt 47-4.  The narrative also points out that Mr. Legg had a gap in his psychiatric care from mid-June to mid-September after his treating psychiatrist, Dr. Gay, left the VA.  Defense Ex. B, Dkt 47-4.

The narrative letter described in greater detail four key treatment dates that preceded the appointment with Dr. Duque.  For example, Mr. Legg's presentation to Dr. Kotz on September 13, 2011 is described from the VA record as increased depression, difficulty sleeping, edginess, impaired concentration, and chronic ongoing suicidal ideation over the prior month.  Defense Ex. B, Dkt 47-4.  The narrative also described Mr. Legg's 10-minute November 8, 2011 visit with Dr. Kaul, which was abbreviated due to an administrative error by the VA, and the additional brief visit with Dr. Kaul on November 28, 2011.  Defense Ex. B, Dkt 47-4.  Finally, the narrative described Mr. Legg's last visit to the VAMC four weeks later, on December 28, 2011, when he was seen by Dr. Duque, who had never previously treated Mr. Legg, on a walk-in basis. Defense Ex. B, Dkt 47-4.

In her narrative the plaintiff alleged that Dr. Duque deviated from the standard of care for psychiatrists by prescribing Mr. Legg a 30-day supply of the drug zolpidem, "despite the clear warning signs from his presentation and his chart," and that she failed

---

[2] The narrative specifically states "Every single VA record for psychotherapy and psychiatric treatment and medication management during 2011 reiterates significant symptoms of MDD, PTSD, and suicidal ideation, along with flashbacks, anxiety, survivor guilt, impaired concentration, marijuana and alcohol use, and a host of other red flags for major depression and suicide risk." Defense Ex. B, Dkt. 47-4, pp. 4-5.

3

to discuss Mr. Legg's condition with his wife or to admit him to the hospital for observation.  Defense Ex. B, Dkt 47-4.  Plaintiff stated that Mr. Legg:

> had a history of substance abuse, with both alcohol and marijuana, and had attempted suicide just over one year prior to his visit with Dr. Duque.  All of these conditions were documented in the VA records, and many were stated by the decedent to Dr. Duque on December 28, 2011.  These records were either not reviewed or not given appropriate weight when the prescription was provided to Mr. Legg.

Defense Ex. B, Dkt 47-4.  The plaintiff also submitted the affidavit of psychiatry expert Steven A. Fayer, M.D., who briefly outlined Mr. Legg's course of mental health treatment with the VA.  Defense Ex. C, Dkt 47-5.

Shortly after submitting the claims, a VA attorney, Kevin Thiemann, requested additional information, and the plaintiff submitted another 30 pages of material, some of which had already been provided with the FTCA claim.   On May 30, 2014, Mr. Thiemann spoke with plaintiff's counsel to request an opportunity to talk directly with the claimant to gather information about anything not in the records.  The plaintiff and her counsel participated in that call on June 13, 2014, and the topics of discussion included Mr. Legg's psychiatric visits starting with Dr. Gay, the gap in his psychiatric visits from June to September 2011, and the treatment visits with Dr. Kaul.  Notably, the VA never requested or indicated it needed further information, and Mr. Thiemann in fact stated to plaintiff's counsel in July 2014 that the plaintiff should file her action in federal court since the VA would not render a decision by the 6-month deadline.

Indeed, the defendant did not timely respond to the FTCA claim.  After this action was filed, by letter of July 24, 2014, the VA informed the plaintiff that it had "carefully reviewed and thoroughly investigated this matter" and that "a review of the medical

4

records fails to indicate any improper or negligent medical treatment on the part of Dr. Duque or any other VA employees." (Emphasis added). A copy of the letter is attached hereto as **Plaintiff Ex. B**.

### B. Federal Court Action

On July 11, 2014, the plaintiff commenced this action by filing a complaint with the United States District Court for the Northern District of New York. A copy of the complaint is attached hereto as **Plaintiff Ex. A**. In the complaint, the plaintiff alleged that Mr. Legg had received counseling and psychiatric services at the VAMC starting with his 2010 suicide attempt, that he was prescribed various medications throughout his treatment, and that he treated with Dr. Kaul and Dr. Duque. Plaintiff Ex. A, ¶¶ 17, 19-28. The plaintiff further alleged that Mr. Legg should not have been prescribed zolpidem "given his history of major depression disorder, suicide attempt and substance abuse problems." Plaintiff Ex. A, ¶ 35.

The defendant answered the complaint on or about September 16, 2014, attached hereto as **Plaintiff Ex. C**. In its Answer, the defendant admitted that Mr. Legg began receiving medical care at the VAMC in 2010 following his suicide attempt, that he treated there with Dr. Kaul and with Dr. Duque, and that Mr. Legg's medical records "speak for themselves." Plaintiff Ex. C, ¶¶ 16, 17, 19-21, 23-28.

Discovery began in late 2014 with the exchange of written requests and documents. Plaintiff's Rule 26 disclosures named each VA provider for Mr. Legg as a potential witness, except Dr. Gay since he was no longer with the VA, as well as Bethany Joncas, the polytrauma care coordinator who sought to contact Mr. Legg in early 2012.

The plaintiff deposed Dr. Kaul on April 14, 2015.  Dr. Kaul's deposition transcript is attached hereto as **Plaintiff Ex. D**.  Dr. Kaul testified that he had reviewed Mr. Legg's chart as part of his usual practice prior to treating Mr. Legg for the first time on October 4, 2011.  Plaintiff Ex. D, pp. 22-23, 25.  He stated that he was aware that Mr. Legg had attempted suicide a year earlier and considered it part of Mr. Legg's patient profile.  Plaintiff Ex. D., pp. 42-43.  According to Dr. Kaul, his knowledge of Mr. Legg's suicide attempt "definitely puts me on guard . . . to make sure such a situation does not arise again" because people who have attempted suicide in the past have a higher risk of suicide.  Plaintiff Ex. D., p. 43.  Dr. Kaul further testified that any provider with access to the VA's medical records system could view a patient's treatment notes and that Mr. Legg's treatment would have consisted of both the psychiatric care Dr. Kaul provided and the therapy provided by the social worker, Mr. Moss.  Plaintiff Ex. D., pp. 25, 28.  Plaintiff also deposed Dr. Kotz, Mr. Moss, and Bethany Joncas, LMSW, in the spring of 2015, all of whom treated or were assigned to monitor Mr. Legg at the VAMC prior to December 28, 2011 and none of whom were involved in his visit with Dr. Duque.

Following depositions of the fact witnesses, the plaintiff's psychiatry expert Robert Lloyd Goldstein, M.D. prepared a 36-page report dated June 19, 2015 based on his "comprehensive review and analysis of the relevant clinical and legal materials pertaining to this case."  Defense Ex. G, Dkt 47-9.  Those materials are outlined in Appendix A to Dr. Goldstein's report, attached hereto as **Plaintiff Ex. E**, and consist of, *inter alia*, Mr. Legg's VAMC records and the deposition transcripts of Dr. Duque, Mr. Moss, Dr. Kaul, and Dr. Kotz.  Because of his VA and private practice experience, Dr. Goldstein opined that the VA guidelines reflected the standard of care followed in

6

private practice, and that a failure to follow those guidelines was a significant and important factor in the VA treatment providers' management of Mr. Legg's care.

Dr. Goldstein identified numerous departures from the standard of care in the course of Mr. Legg's care and treatment, including a failure to: utilize scientifically validated instruments to guide and modify his treatment plan; assign a mental health treatment coordinator for Mr. Legg's case; initiate treatment with a combination of antidepressant medication and psychotherapy; re-assess Mr. Legg for alcohol use; properly monitor Mr. Legg's progress; and explore critically important psychotherapy issues with Mr. Legg.  Dr. Goldstein also identified the prescription for clonazepam as a breach of the standard of care.  Defense Ex. G, Dkt 47-9.

Dr. Fayer also specifically addressed many of the same deviations in his expert report, dated July 2, 2015, as part of the plaintiff's expert disclosure.  Defense Ex. F, Dkt 47-8.  According to Dr. Fayer, it was a deviation from the standard of care not to include Mrs. Legg in Mr. Legg's care throughout 2011 and for Mr. Legg to have gone without a psychiatrist for three months following Dr. Gay's departure from the VA.  Defense Ex. F, Dkt 47-8.  Dr. Fayer also opined that it was a deviation from the standard of care for Mr. Legg's psychotherapy appointments to be scheduled three weeks apart, considering his symptoms, and not to have followed up with him after he missed an appointment at the VAMC in October 2011.  Defense Ex. F, Dkt 47-8.  According to Dr. Fayer, it was also a deviation from the standard of care for Mr. Legg's providers not to have coordinated their care of Mr. Legg.  Defense Ex. F, Dkt 47-8.

The defendant's expert, Gary J. Horwitz, M.D., was retained in June 2015 in part to help the defendant depose plaintiff's experts.  Dr. Horwitz also prepared a report

7

dated August 27, 2015 in response to plaintiff's expert reports, and appeared for his deposition on October 22, 2015.  A copy of the report is attached hereto as **Plaintiff Ex. F** and a copy of Dr. Horwitz's deposition transcript is attached hereto as **Plaintiff Ex. G**. In his report and at his deposition, Dr. Horwitz confirmed that he reviewed Mr. Legg's Syracuse VA records, including treatment records from June 14, 2011 and September 7, 2011 and that he was familiar with Mr. Legg's mental health history, including his 2010 suicide attempt.  Plaintiff Ex. F; Plaintiff Ex. G, pp. 28, 54-55.  In his report, Dr. Horwitz described in detail Mr. Legg's course of treatment throughout 2011.  Plaintiff Ex. F.  Dr. Horwitz also opined it was Mr. Legg's responsibility to find a new psychiatrist after Dr. Gay left the VA, an event which defense counsel acknowledged was referenced in a July 20, 2011 note by Mr. Moss.  Plaintiff Ex. G, pp. 30, 32.  Dr. Horwitz also reviewed Dr. Kaul's notes from October 2011 and November 2011 and was aware of their contents.  Plaintiff Ex. F; Plaintiff Ex. G, pp. 42-43, 52.

Defense expert George David Annas, M.D., M.P.H., was retained July 7, 2015 to respond to plaintiff's experts; he did so in a report dated September 3, 2015.  A copy of the report is attached hereto as **Plaintiff Ex. H**.  The plaintiff deposed Dr. Annas on November 4, 2015.  A copy of his deposition testimony is attached hereto as **Plaintiff Ex. I**.  Dr. Annas reviewed the prior deposition testimony, as well as Mr. Legg's VAMC records from December 11, 2010 through December 28, 2011, and was familiar with Dr. Kotz's notes addressing Mr. Legg's alcohol use and chronic suicidal ideation.  Plaintiff Ex. H, pp. 62-63, 64-65.  Dr. Annas admitted that he was asked by defense counsel to address in his report only the two breaches identified in plaintiff's complaint.  Plaintiff Ex. H; Plaintiff Ex. I, p. 57.  He further testified that Mr. Legg "might have taken a fair

amount of time to re-establish care" following Dr. Gay's departure from the Syracuse VA.  Plaintiff Ex. I, pp. 87-89.  Plaintiff also deposed Dr. Kotz and Mr. Moss, both of whom were questioned about and testified to their treatment records and Mr. Legg's treatment history from December 2010 to December 2011.

## III. ARGUMENT

The defendant now moves *in limine* to limit the evidence at trial to only those facts surrounding Mr. Legg's December 28, 2011 VAMC visit with Dr. Duque, on the grounds, first, that the Court lacks jurisdiction to consider deviations from the standard of care that occurred prior to that date and, second, because the evidence of those deviations is irrelevant.  The plaintiff opposes the defendant's motion and, out of an abundance of caution, cross moves to amend the complaint pursuant to Fed. R. Civ. Pro. 15 to formally allege additional deviations from the standard of care and a claim for loss of consortium.

The Court has jurisdiction over all the facts outlined in the FTCA claim and all the alleged deviations that flow from those facts and from plaintiff's negligence claim.  The plaintiff properly filed and thoroughly presented the facts comprising the alleged breach in the standard of care from December 2010 to December 2011, including much more information than is required for a notice claim under the FTCA.  A reasonable and timely investigation by the VA into the facts contained in the plaintiff's detailed FTCA claim should have alerted the defendant that Mr. Legg's care and treatment at the VAMC beginning in 2010 was part of a chain of events that led to his death in January 2012.

Moreover, evidence of deviations from the standard of care between December 2010 and the date of Mr. Legg's death in January 2012 are relevant to whether Dr.

Duque's acts and omissions on December 28, 2011 met the standard and therefore such evidence should not be precluded at trial.

Finally, the plaintiff is entitled to amend the complaint to conform to the allegations of malpractice raised in the plaintiff's expert reports and to prove those allegations at trial.  The plaintiff is also entitled to plead a claim for loss of consortium on her own behalf from December 2010 through the death of her husband in January 2012, as it is derivative of Mr. Legg's valid claim for pain and suffering.

### A. This Court Maintains Jurisdiction Over Plaintiff's Claims of Malpractice

It is well established that an administrative claim need not meet formal pleading requirements and a claimant is not required to provide a preview of her lawsuit to the government agency to which she makes a claim by reciting every factual detail that might be relevant.  *Goodman v. United States*, 298 F.3d 1048, 1052 (9th Cir. 2010); *Johnson by Johnson v. United States*, 788 F.2d 845, 848 (2d. Cir. 1986).  Moreover, an administrative claim is not intended to be the vehicle by which a plaintiff will definitively prove her case.  Rather, an FTCA claim is intended to put the government on notice for it to investigate the claim.

According to the United States Court of Appeals for the Second Circuit, "[a]ll that is necessary is that a claim be specific enough to serve the purposes intended by Congress in enacting § 2675(a)."  *Johnson by Johnson*, 788 F.2d at 848.  Those purposes are "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States."  *Johnson by Johnson*, 788 F.2d at 848-849 (quoting S. Rep.

No. 1327, 89th Congress, 2d Sess. 2 (1966) (internal quotations omitted); *see* 28 U.S.C. § 2675(a).

Because the statute is designed to allow the government to evaluate and consider settlement of a claim, a claimant need only provide "sufficient information both to permit an investigation and to estimate the claim's worth." *Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir. 1983). Simply, 28 U.S.C. § 2675(a) "imposes on claimants a burden of notice, not substantiation, of claims." *Sweeney v. Am. Registry of Pathology*, 287 F.Supp.2d 1, 4 (D.D.C. 2003) (citing *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987)). To meet the presentment demands of 28 U.S.C. § 2675(a), "the government requires all claimants to submit Standard Form 95,[3] a one page claim for requesting a 'description of accident' and the 'nature and extent of the injury.'" *Johnson by Johnson*, 788 F.2d at 849.

In *Johnson by Johnson v. United States*, 788 F.2d 845 (2d Cir. 1986), the plaintiffs presented an administrative claim to the United States Postal Service alleging that a postal employee sexually assaulted the infant plaintiff. The Postal Service denied the claim on the ground that the incident the plaintiffs described in their administrative claim sounded in assault and battery for which the government had not waived sovereign immunity. *Johnson by Johnson*, 788 F.2d at 848; *see* 28 U.S.C. § 2860(h).

The plaintiffs subsequently commenced an action against the government which included a cause of action of negligent supervision of the employee who allegedly assaulted the infant plaintiff. *Johnson by Johnson*, 788 F.2d at 848. The District Court dismissed the complaint for lack of subject matter jurisdiction on the ground that the

---

[3] The Form 95 is actually not mandatory for filing an FTCA claim. *See* http://www.va.gov/OGC/FTCA.asp.

administrative claim lacked any facts suggesting that any entity other than the postal employee himself might be responsible for the infant plaintiff's injuries.  *Johnson by Johnson*, 788 F.2d at 848.

On appeal, the United States Court of Appeals for the Second Circuit found that the plaintiff had met the presentment requirements of 28 U.S.C. § 2675(a) and that the District Court "erred in extending them to require that a ground of liability cannot be maintained unless factual elements uniquely related to that theory were first presented in the administrative claim."  *Johnson by Johnson*, 788 F.2d at 849.

The Court reasoned that the conduct alleged in the administrative claim was sufficient to lead the Postal Service to investigate its prior knowledge of the subject employee's propensity for committing assault.  *Johnson by Johnson*, 788 F.2d at 849.

According to the Court:

> [a]lthough the claim supplied no facts evidencing negligent supervision and did not allege all the factual elements of such a theory of liability, a reasonably thorough investigation of the incident should have uncovered any pertinent information in the government's possession relating to the agency's knowledge, or lack of knowledge, of any prior sexual misconduct by its employee.

*Johnson by Johnson*, 788 F.2d at 849 (citing *Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980)).

In *Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980), cited favorably by the Second Circuit in *Johnson by Johnson v. United States*, 788 F.2d 845 (2d Cir. 1986), the plaintiff filed an administrative claim with the United States Army Claims Service alleging that Army physicians negligently diagnosed and treated his wife in December 1972 and January 1973, leading to her death.  The Army denied the claim and the

plaintiff commenced an action against the government. *Rise*, 630 F.2d at 1070. Following the pretrial deposition of the government's expert witness, the plaintiff interposed additional claims that the Army was negligent in referring the decedent to another hospital and in its supervision of her treatment there. *Id.*

The plaintiff then moved for summary judgment. *Rise*, 630 F.2d at 1070. In opposition, the government argued *inter alia* that the District Court lacked jurisdiction to consider the plaintiff's additional claims of negligence because they were not presented in his administrative complaint. *Rise*, 630 F.2d at 1070. The District Court granted the motion and the government appealed. *Id.* at 1071.

On appeal, the United States Court of Appeals for the Fifth Circuit held that the plaintiff's administrative claim "was sufficient to put the Army on notice that its actions in May were part of the chain of events that culminated in [the decedent's] death." *Rise*, 630 F.2d at 1071. According to the court:

> [w]e think the Army's investigation of the death should have produced (and the filing of the third-party complaint suggests that it did produce) evidence that South Fulton Hospital facilities may have been inadequate for aneurysm surgery, and, consequently, that referring [the decedent] there might have been negligence. We conclude from this that [plaintiff's] claim put the Army on constructive notice that the May 1973 referral might have been negligent. Accordingly, [plaintiff] should be allowed to prosecute his case in court on theories of liability arising from the referral.

*Rise*, 630 F.2d at 1071-1072.

In the instant matter, the Court has jurisdiction over the plaintiff's claims of malpractice which occurred between December 2010 and Mr. Legg's death. The plaintiff properly presented those claims administratively and a reasonably thorough

13

investigation by the VA into the facts alleged in the plaintiff's administrative claim should have put the VA on notice of them.

### i. The Plaintiff Properly Presented Her Administrative Claim

In the instant matter, the plaintiff exceeded the presentment requirements. In addition to submitting Standard Form 95 in connection with the administrative claim against the VA, the plaintiff also submitted an eight-page narrative outlining Mr. Legg's detailed psychiatric history at the VAMC beginning in 2010, along with copies of his medical records and an expert affidavit. *See* Defense Exs. A and B.

The plaintiff's narrative letter specifically referenced Mr. Legg's three visits to the VAMC in December 2010, over the course of which he was diagnosed with PTSD, MDD, and a history of occasional marijuana use and binge drinking at levels that increased his risk for purposeful or accidental self-harm harm. *See* Defense Ex. B, Dkt 47-4. The narrative and records also chronicled Mr. Legg's symptoms and treatment throughout 2011, including a lapse in psychiatric care after Dr. Gay left the VA in the spring of 2011, and Mr. Legg's repeated efforts to obtain effective treatment to alleviate his PTSD and MDD symptoms through VA treatment. *See* Defense Ex. B, Dkt 47-4. The medical records themselves, which the plaintiff also provided as part of the FTCA claim, revealed a failure on the part of the VA to properly administer and coordinate Mr. Legg's care. Defense Ex. F, Dkt 47-8; Defense Ex. G, Dkt 47-9.

Even if the plaintiff did not allege these facts as specific deviations from the standard of care, the plaintiff's allegations that Dr. Duque deviated from the standard of care by prescribing Mr. Legg a 30-day supply of the drug zolpidem, "despite the clear warning signs from his presentation and his chart," and that she did not review or give

proper weight to Mr. Legg's history of substance abuse and prior suicide attempt necessarily implicate Mr. Legg's prior treatment.[4]  *See* Defense Ex. B, Dkt 47-4.

The information presented by the plaintiff in her administrative claim was more than sufficient to allow the government to investigate, evaluate, and consider settlement of the claim.  *See Keene Corp.*, 700 F.2d at 842.  Any reasonably thorough investigation into the specific claims of malpractice outlined in the administrative claim would have necessarily included a review of Mr. Legg's prior VAMC treatment, which the plaintiff outlined in great detail.  *See Rise*, 630 F.2d at 1071-1072.  Such an investigation would have produced evidence that other aspects of Mr. Legg's treatment were inadequate and, consequently, that the VA might have been negligent.  *Id.*

The plaintiff's detailed administrative claim therefore put the VA on notice that it may have been negligent leading up to Mr. Legg's presentation to Dr. Duque on December 28, 2011.  The Court therefore has jurisdiction to entertain such claims and the plaintiff should be permitted to prosecute this case on theories of liability arising from that treatment.  *See Rise*, 630 F.2d at 1071-1072.

While the defendant argues that alleging one act of medical malpractice does not inherently or implicitly exhaust all claims of malpractice, the facts the plaintiff alleged in her detailed administrative claim were sufficient to put the VA on notice that its actions prior to December 28, 2011 were part of the chain of events that ultimately culminated in Mr. Legg's death.  *See Rise*, 630 F.2d at 1071.  As the Second Circuit reasoned in

---

[4] Indeed, it is virtually impossible to separate the care rendered by the VA on December 28, 2011 from the care leading up to that date because the 2011 treatment directly bears on Mr. Legg's condition at his last VA visit, when the zolpidem prescription was provided.  Plaintiff does not allege that zolpidem is always inappropriate, rather, she alleges that based on her experts' analyses it was inappropriate for Mr. Legg given his condition at the time it was prescribed.

*Johnson by Johnson*, 788 F.2d at 849, although the government's position "might have some logic if the claimant were to be held strictly to principles of common law pleading we believe that a more liberal standard was intended."

The *Johnson by Johnson* court held that notice of a single act of sexual assault should have alerted the Postal Service to investigate the subject employee's prior misconduct, an exercise that necessarily required it to look back from the single incident alleged in the administrative claim presented in that case. *Johnson by Johnson*, 788 F.2d at 849. Like in *Johnson by Johnson*, a full investigation into the negligent acts alleged by the plaintiff in the instant matter also required a look back in Mr. Legg's treatment. The only difference is that the plaintiff in the instant matter also supplemented those claims of malpractice with a detailed summary of Mr. Legg's mental health treatment history in order to aid the VA in its investigation and ultimately facilitate a resolution of this matter, as Congress intended when it enacted 28 U.S.C. § 2675(a). *See Johnson by Johnson*, 788 F.2d at 848-849 (quoting S. Rep. No. 1327, 89th Congress, 2d Sess. 2 (1966)). The statute requires nothing more.

The VA in this matter took no action to apprise the plaintiff of any objections to the presentment of her claim within the six months it had to respond under 28 U.S.C. § 2675(a). The VA only provided its denial by letter dated July 24, 2014, seven months after the plaintiff submitted her administrative claim and a month after the plaintiff deemed her claim denied as permitted by 28 U.S.C. § 2675(a). *See* Plaintiff Ex. B. "Where a claimant makes a reasonable effort to notify federal agencies of a claim . . . and the Government takes no action to apprise the claimant of objections to the presentment within the six-month time period it has to make final disposition of the

16

claim, it seem to us in the very least, that such delay qualifies the force of the Government's objections when it subsequently moves for dismissal on the ground that the presentment was inadequate for its investigative purposes." *Sweeney*, 287 F.Supp.2d at 4 (citing *GAF Corp. v. United States*, 818 F.2d 901, 915-916 (D.C. Cir. 1987)).

This Court has jurisdiction over the plaintiff's claims of malpractice which occurred between December 2010 and Mr. Legg's death.   The plaintiff properly presented those claims administratively and a reasonably thorough investigation by the VA into the facts alleged in the plaintiff's administrative claim should have put the VA on notice of them.   For the foregoing reasons, the defendant's motion should be denied.

### ii.  The Defendant Had Proper Knowledge of Plaintiff's Claims

The VA's denial of the plaintiff's administrative claim indicates that it understood the claim to include Mr. Legg's treatment leading up to December 28, 2011.   *See Goodman*, 298 F.3d 1048.   As indicated by the FTCA claims, their voluminous attachments, and plaintiff's expert reports, defendant was well aware of alleged deviations from the standard of care and the facts supporting those allegations. Defendant not only knew all the relevant facts in December 2013 at the time the FTCA claim was filed, but was permitted six months by law to investigate said claim, and did not thoroughly engage in that process.

In *Goodman v. United States*, 298 F.3d 1048, 1052 (9th Cir. 2010), the plaintiff filed an administrative claim with the United States Department of Health and Human Services alleging that his wife "died of things and/or mistakes" while receiving experimental treatment for cancer, that medication she received "was a mistake and

more than likely complicated her condition," and that "things . . . were overlooked" in a surgical procedure his wife underwent.  As part of its denial of the claim, the Department argued that there was no evidence that the decedent died as a result of negligence and that the decedent "was well informed" of the risk of death when she gave her consent to undergo experimental treatment.  *Goodman*, 298 F.3d at 1052.

The plaintiff subsequently brought an action against the government and interposed a cause of action for lack of informed consent, which the government then moved to strike on the ground that the court lacked jurisdiction over that claim because the plaintiff had not exhausted it through the administrative process.  *Goodman*, 298 F.3d at 1052.  The District Court denied the motion and the government appealed.  *Id.* at 1052-1053.

According to the United State Court of Appeals for the Ninth Circuit, "considering the precise nature of the notice here given, the government's response to it and the claim later asserted, we are led to conclude that [plaintiff's] informed consent claim was fairly included . . . in his administrative claim."  *Goodman*, 298 F.3d at 1056.  Specifically, the Court concluded from the Department's denial of the administrative claim, in which it indicated that the decedent "was well informed" of the risk of death when she consented to treatment, that "the government was fairly on notice that the informed consent claim was before it."  *Goodman*, 298 F.3d at 1057.

In its response to the plaintiff's administrative claim in the instant matter, the VA stated that "[w]e have carefully reviewed and thoroughly investigated this matter."  Plaintiff Ex. B.  According to the VA, "review of the medical records fails to indicate any improper or negligent medical treatment on the part of Dr. Duque <u>or any other VA</u>

employees." Plaintiff Ex. B (emphasis added). The response further stated that "there is no indication <u>in the available records</u>" that prescription of the Ambien was a deviation from accepted standards. Plaintiff Ex. B (emphasis added). The VA's response demonstrates that it was on notice that the plaintiff was claiming that the treatment outlined in the plaintiff's administrative claim prior to December 28, 2011 constituted negligence, even if the plaintiff did not explicitly characterize every such instance of treatment as a deviation from the standard of care. *See Goodman*, 298 F.3d at 1057; *Rise*, 630 F.2d 1068.

As discussed above, any reasonably thorough investigation into the specific claims of malpractice outlined in the administrative claim would have necessarily included a review of Mr. Legg's prior VAMC treatment and would have produced evidence that aspects of that treatment might have been inadequate. *See Rise*, 630 F.2d at 1071-1072. Because the VA should have understood the plaintiff's administrative claim to encompass Mr. Legg's treatment leading up to December 28, 2011, the VA was fairly on notice that the plaintiff was claiming that such treatment might also constitute medical malpractice, and this Court therefore has jurisdiction to entertain that claim.

### B. Evidence of Mr. Legg's Prior Treatment is Admissible

The defendant now objects to the introduction at trial of evidence of Mr. Legg's prior treatment on the grounds that it is irrelevant. Even if this Court determines that it does not have jurisdiction to consider deviations from the standard of care in the care and treatment of Mr. Legg between December 2010 and December 28, 2011, Mr. Legg's medical history is nevertheless relevant to determining whether Dr. Duque

19

deviated from the standard of care when she prescribed Mr. Legg a 30-day supply zolpidem.

The plaintiff's complaint clearly alleges that zolpidem should not have been prescribed to Mr. Legg on December 28, 2011 given his history of major depression disorder, a suicide attempt, and substance abuse problems, as well as "the gravity of Mr. Legg's overall condition." Plaintiff Ex. A, ¶¶ 35, 38. These elements of Mr. Legg's treatment history are therefore not only relevant, but essential to presenting the plaintiff's case. Mr. Legg's presentation to the VAMC on December 28, 2011 cannot be viewed in a vacuum considering that it was a single point on a long continuum of care that ultimately resulted in his death. The extent of Dr. Duque's awareness and consideration of his prior treatment history is crucial in determining the propriety of the treatment she provided on that date. Whether framed as negligence or not, it is not possible for the plaintiff to discuss the December 28, 2011 treatment without also discussing Mr. Legg's medical history.

Moreover, the defendant would suffer no prejudice from the introduction of Mr. Legg's medical history, as such history was referenced in the plaintiff's administrative claim, complaint, and the reports of two experts whom the defendant deposed. *See* Defense Ex. A, Dkt 47-3; Plaintiff Ex. A; Defense Ex. B, Dkt 47-4; Defense Ex. F, Dkt 47-8; Defense Ex. G, Dkt 47-9.

Because Mr. Legg's psychiatric treatment history is relevant and necessary to determining whether Dr. Duque's December 28, 2011 treatment met the standard of care, such evidence is admissible at trial and the defendant's motion should be denied.

**C. The Plaintiff is Entitled to Amend Her Complaint**

To the extent that the defendant objects to introduction of evidence of Mr. Legg's prior treatment as deviating from the standard of care on the grounds that such allegations were not pleaded in the complaint, the plaintiff further submits this memorandum in support of her cross motion to amend the complaint pursuant to Fed. R. Civ. Pro. 15 in order to formally allege those deviations and to add a cause of action for loss of consortium.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's consent or the court's leave.  The court should freely give leave when justice so requires."  Federal Rule of Civil Procedure 15(b)(1) further provides that "[i]f, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended."  Moreover, "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."  Fed. R. Civ. P. 15(b)(1).

**i.  The Plaintiff is Entitled to Amend the Complaint to Allege the Deviations Identified by the Plaintiff's Experts**

Justice requires that the plaintiff be entitled to amend the complaint to allege those deviations from the standard of care identified by Dr. Fayer and Dr. Goldstein. *See* Defense Ex. F, Dkt 47-8; Defense Ex. G, Dkt 47-9.

In *Hunter v. Veterans Admin. of U.S.*, No. 78-CV-321, 1981 WL 380702 (N.D.N.Y. Jan. 7, 1981), the plaintiff filed a complaint alleging that the defendant was negligent in preparing and placing a bandage following a medical operation, causing the plaintiff to suffer permanent injuries.  The original complaint contained no allegations

21

that the surgery itself was performed in a negligent manner.  *Hunter*, No. 78-CV-321, 1981 WL 380702 (N.D.N.Y. Jan. 7, 1981).  Following depositions, the plaintiff moved to amend the complaint to interpose additional allegations of negligence in the actual performance of the surgery.  *Id.*

The United States District Court for the Northern District of New York granted the motion.  *Hunter*, No. 78-CV-321, 1981 WL 380702 (N.D.N.Y. Jan. 7, 1981).  The court reasoned that the plaintiff had not delayed in moving to amend since the basis of the additional allegations of negligence were not known until depositions were conducted. *Hunter*, No. 78-CV-321, 1981 WL 380702 (N.D.N.Y. Jan. 7, 1981).  The court further reasoned that the defendant was not unduly prejudiced by allowing the amendment since "the original pleading sufficiently put defendant on notice of the general fact situation out of which the additional claims of negligence arise."  *Id.*

Based on the defendant's objections in its motion *in limine* in the instant matter, the plaintiff now seeks to amend the complaint to conform to the evidence adduced and to include the deviations identified by the plaintiff's experts.  *See* Defense Ex. F, Dkt 47-8; Defense Ex. G, Dkt 47-9.  Specifically, the plaintiff seeks to add allegations that the defendant departed from the standard of care by failing to provide sustained and effective psychiatric and therapeutic treatment beginning when Mr. Legg first presented to the VAMC in December 2010.  A copy of plaintiff's proposed amended complaint is attached hereto as **Plaintiff Ex. J**.

The plaintiff's original complaint alleges that Mr. Legg had received counseling and psychiatric services at the VAMC since his 2010 suicide attempt, that he was prescribed various medications throughout his treatment, and that he treated with Dr.

Kaul and Dr. Duque.  Plaintiff Ex. A, ¶¶ 17, 19-28.  The plaintiff further alleged that Mr. Legg should not have been prescribed zolpidem "given his history of major depression disorder, suicide attempt and substance abuse problems."  Plaintiff Ex. A, ¶ 35.

These allegations, along with the deposition testimony and plaintiff's expert reports, sufficiently put the defendant on notice that the plaintiff alleged deviations from the standard of care dating back to December 2010.  The plaintiff now merely seeks to formally plead these allegations in light of the objections raised by the defendant in its motion *in limine.*  The plaintiff did not seek to amend the complaint sooner because of the obvious nature of the deviations explicitly set forth in plaintiff's expert reports and at the plaintiffs' experts' depositions, at which time the defendant had the opportunity to depose them on those claims, but chose not to.  *See* Defense Ex. F, Dkt 47-8; Defense Ex. G, Dkt 47-9.

Given such an opportunity, the defendant would suffer no prejudice by the mere formality of amending the complaint.  Although the defendant's experts are familiar with Mr. Legg's prior care and treatment and had access to the medical records and deposition testimony, the defendant's expert Dr. Annas admitted that he was asked by defense counsel not to address all of the breaches the plaintiff's experts alleged in their reports.  Plaintiff Ex. H; Plaintiff Ex. I, p. 57.  While this may have been a litigation strategy, it does not diminish the fact that the defendant had ample opportunity to conduct broad discovery into any issues that are likely to arise at trial, including those

explicitly raised by the plaintiff's experts which the plaintiff now seeks to formally plead in the complaint.[5]  *See Croman Corp. v. United States*, 94 Fed. Cl. 157 (2010).

The defendant was also well aware that the plaintiff intended to raise these deviations from the standard of care when the plaintiff deposed numerous mental healthcare providers who were not involved in Mr. Legg's care and treatment at the VAMC on December 28, 2011, including Dr. Kaul, Dr. Kotz, Mr. Moss, and Ms. Joncas.

As such, the plaintiff should be permitted to amend the complaint to allege those deviations from the standard of care identified by Dr. Fayer and Dr. Goldstein and as set forth in the plaintiff's proposed amended complaint.  *See* Plaintiff Ex. J.  It is plaintiff's position that such an amendment would not require further discovery, although plaintiff has attached supplemental interrogatory responses as **Plaintiff Ex. K** to conform to her proposed amended complaint.  In addition, plaintiff will not object at trial to testimony offered by defense experts concerning the additional deviations identified by Drs. Fayer and Goldstein and set forth in the plaintiff's proposed amended complaint.

## ii. The Plaintiff is Entitled to Amend the Complaint to Allege Loss of Consortium

The plaintiff also seeks to add a derivative claim for loss of consortium to the amended complaint from December 2010 through Mr. Legg's death in January 2012. *See* Plaintiff Ex. J, ¶ 49.  A surviving spouse can recover for loss of consortium for the period of her decedent spouse's conscious pain and suffering prior to death.  *LaBarre v. Werner Enterprises, Inc.*, No. 1:12-CV-1316(MAD), 2015 WL 8056052, *5 (N.D.N.Y. Dec. 4, 2015) (citing *Liff v. Schildkrout*, 49 N.Y.2d 622 (1980)).

_____

[5]  The limitations that defendant imposed on its experts in responding to plaintiff's experts appears to be a strategic decision designed to support the filing of this motion, which undercuts any claims of prejudice or surprise.

In the instant matter, the plaintiff is alleging that Mr. Legg's conscious pain and suffering began in December 2010.  The plaintiff is therefore entitled to assert a claim for loss of consortium from that time to the date of her husband's death in January 2012.  *See LaBarre*, No. 1:12-CV-1316(MAD), 2015 WL 8056052, *5 (N.D.N.Y. Dec. 4, 2015).  Plaintiff stipulates that the proof at trial on her loss of consortium claim will not go beyond her affidavits, declarations, deposition testimony, and interrogatory responses previously given in the case.

## IV. CONCLUSION

The relief sought by the defendant should not be granted because this Court has jurisdiction to consider plaintiff's claims of malpractice throughout Mr. Legg's VAMC treatment from December 2010 through January 2012.  Plaintiff properly presented those claims administratively and a reasonable investigation by the VA into the should have alerted the defendant that Mr. Legg's care and treatment at the VAMC beginning in 2010 was part of a chain of events that led to his death in January 2012.

Moreover, evidence of deviations from the standard of care between December 2010 and the date of Mr. Legg's death in January 2012 are relevant to whether Dr. Duque's acts and omissions on December 28, 2011 met the standard and therefore such evidence should not be precluded at trial.

Finally, the plaintiff is entitled to amend the complaint to conform to the allegations of malpractice raised in the plaintiff's expert reports and to prove those allegations at trial.  The plaintiff is also entitled to add a related claim for loss of consortium on behalf of Mrs. Legg from December 2010 through the death of her husband in January 2012.

25

Dated: May 23, 2016

COUGHLIN & GERHART, LLP

/s/ Oliver N. Blaise, III
_____
Oliver N. Blaise, III, Esq.
Bar Roll No. 302347
Brian T. Sadonis, Esq.
Bar Roll No. 303208
99 Corporate Drive
PO Box 2039
Binghamton, New York 13902
(607) 723-9511

MCKAIN LAW, PLLC

/s/ Carla N. McKain, Esq.
_____
Carla N. McKain, Esq.
Bar Roll No. 516205
136 E. State Street
Ithaca, New York 14850
(607) 277-4433