# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

NANCY LEGG, Individually and as Administratrix
of the Estate of Jeffrey Max Legg,

        Plaintiff,

    v.                                    Civil Action No. 3:14-CV-0838
                                             (GTS/DEP)

UNITED STATES OF AMERICA,

        Defendant.

------------------------------------------------------------

**PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANT'S**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Nancy Legg,

individually and as Administratrix of the Estate of Jeffrey Max Legg, hereby responds to the

First Set of Interrogatories propounded by the Defendant as follows:

**GENERAL RESPONSES AND OBJECTIONS**

        Each of the Plaintiffs' responses, in addition to any specifically stated objections, is

subject to and incorporates the following general responses and objections.  The assertion of the

same, similar, or additional objections, or a partial response to any individual request does not

waive any of the Plaintiffs' general responses and objections.

        1.      The following responses reflect the current state of the Plaintiff's knowledge,

understanding and belief respecting matters about which inquiry has been made.  The Plaintiff

expressly reserves her right to supplement or modify these responses with such pertinent

information as she may hereafter discover or as may be informed by the opinions of experts

retained by the parties to testify in the trial of this matter, and will do so to the extent required by

the Federal Rules of Civil Procedure.  The Plaintiff expressly reserves the right to rely on, at any time, including trial, subsequently discovered documents and/or materials that have been produced promptly upon discovery.

2.     The Plaintiff objects to any interrogatory that seeks information constituting or containing information concerning communications between the Plaintiff and her counsel, which are protected by the attorney-client privilege.

3.     The Plaintiff objects to any interrogatory that seeks information constituting or containing information prepared in anticipation of or as a result of litigation or which is otherwise protected by the work product doctrine or other available privilege or protection.

4.     The inadvertent provision of information or the production by the Plaintiff of documents pursuant to Fed. R. Civ. P. 33(d) containing information protected from discovery by the attorney-client privilege, work product doctrine or any other applicable privilege, shall not constitute a waiver of such privileges with respect to that information or those of any other documents.  In the event that inadvertent production occurs, the Defendant shall return all inadvertently produced documents to the Plaintiff upon request, and/or shall make no use of the contents of such information or documents nor premise any further discovery on information learned therefrom.

5.     The Plaintiff objects to any interrogatory to the extent that it purports to impose upon her any obligation beyond those imposed by the Federal Rules of Civil Procedure, including, but not limited to, any interrogatory that exceeds the scope of Federal Rules of Civil Procedure 26(b) and 33.

6.     The Plaintiff objects to these interrogatories to the extent that they are over-broad, unduly burdensome, vague, ambiguous, confusing, require speculation to determine their meaning or use imprecise specifications of the information sought.

7.     The Plaintiff objects to any interrogatory to the extent that it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

8.     The Plaintiff objects to any interrogatory as unduly and unnecessarily burdensome to the extent that it seeks information that is a matter of public record, already in the Defendant's possession, or otherwise readily available to the Defendant, and, therefore, may be accessed and obtained by the Defendant with less effort than the Plaintiff would expend to identify and provide the requested information.

9.     None of the objections or responses contained herein is an admission concerning the existence of any documents or materials, the relevance or admissibility of any documents, materials or information, or the truth or accuracy of any statement or characterization contained in Defendant's First Set of Interrogatories. The Plaintiff's written responses are made without waiving, but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy, materiality or any other proper grounds, to the use of the information provided herein, in whole or in part, in any subsequent proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other discovery requests involving or relating to the subject matter of these requests; and (c) the right at any time to revise, correct, add or clarify any of the responses provided herein.

10.     The Plaintiff objects to any interrogatory to the extent it is a contention interrogatory.  Pursuant to Fed. R. Civ. P. 33(c), the Plaintiff objects to any such

3

interrogatory on the grounds that it is premature in light of the present early stage of discovery.  The Plaintiff expects to receive documents through discovery that will concern and provide information responsive to such interrogatories.   Because Fed. R. Civ. P. 26 imposes a duty of supplementation, complying with such interrogatories would require the Plaintiff to continually supplement her responses each time she receives an additional document or information concerning the subject contention on which the interrogatory seeks information.   Doing so would cause the Plaintiff to suffer unnecessary burden and expense and would not serve to narrow the issues that are in dispute. *See, e.g, Nestle Foods Corporation, v. Aetna Casualty and Surety Company,* 135 F.R.D. 101, 110-111 ( D.N.J. 1990); *Conopco, Inc. v. Warner-Lambert Co.*, 2000 WL 342872, * 4 (D.N.J. 2000); *B. Braun Medical Inc., v. Abbot Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).   Accordingly, in response to any such contention interrogatory, the Plaintiff will provide a response encompassing the current state of her knowledge, belief, and understanding, but reserve the right to supplement her interrogatory response pursuant to Fed. R. Civ. P. 26 at the conclusion of discovery, both as to the merits of this action and with respect to experts designated to testify at trial.

11.     The Plaintiff objects to any interrogatory that seeks information that is already in the Defendant's possession.

12.     The Plaintiff states that the answer to many of the Defendant's interrogatories may, in substantial part, be derived or ascertained from the Plaintiff's records as well as documents produced by the Defendant in discovery.   Pursuant to Fed. R. Civ. P. 33(d), as the burden of deriving or ascertaining the answer to such interrogatories from such records and documents is substantially the same for the Defendant, the Plaintiff will respond to such

4

interrogatories by identifying the documents and records from which the answer may be ascertained.

13.     Unless otherwise indicated, the Plaintiff will not provide information encompassed by her general responses and objections or by her specific objections set forth below.

### SPECIFIC OBJECTIONS AND RESPONSES

### BIOGRAPHICAL AND MARITAL HISTORY OF PLAINTIFF

1.     State the full name, date of birth, age, Social Security number, residence address and phone number, and if applicable, business address and phone number of plaintiff and plaintiff's decedent. In addition, state each and every name by which plaintiff and plaintiff's decedent has ever been known.

**ANSWER:**  Nancy Legg, 7/15/1982, 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, 11 Main Street, Candor, New York 13743, 903-821-3190, 400 Lake Street, Ithaca, New York 14850, 607-257-8557. Plaintiff also has gone by Nancy Ewing Meyer Legg.

Jeffrey Max Legg, 1/24/1978, 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, formerly of 11 Main Street, Candor, New York 13743, former work address of 122 N. Aurora Street, Ithaca, New York. Plaintiff's decedent has not gone by other names.

2.   List by name, address, current or last known telephone number each and every employer for whom both you and plaintiff's decedent worked during the last 10 years, specifying for each the following: the inclusive dates of employment; the duties of employment; the amount of gross and net monthly salary; and the reasons for leaving the employment.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving said objection, and subject to it, Plaintiff answers as follows:

Nancy Legg:
- September 2008-present; general education classroom teacher; Ithaca City School District; 400 Lake St, Ithaca, NY 14850; (607) 257-8557; $46,000; still employed
- August 2009-current; age group soccer coach; Youth Development Program; 200 Blackstone Ave., Ithaca, NY 14850; (607) 280-0480; $25/hour; still employed
- June-July 2014, June-July 2013, June-July 2012, July 2011, July 2010; Assistant Director Co Ed Soccer Day Camps and Women's Soccer Skills Camp; Cornell University; 377 Pine Tree Road, Ithaca, NY 14850; $400/week; summer work
- August 2007-June 2008; general education classroom teacher; McKinney Independent School District; 1 Duvall Street, McKinney, TX 75069; (469) 302-4000; $43,000; moved to New York
- August 2005-June 2007; general education and English as a second language classroom teacher; Prosper Independent School District; 605 East Seventh Street, Prosper, TX 75078; (469) 219-2000; $39,500; switched districts
- June 2005-September 2006; sales associate; Kid to Kid; 2035 West McDermott, Suite 470, Allen, TX 75013; $8/hour; working full time as a teacher
- November 2004-May 2005; sales associate; Dillards; 4800 Texoma Parkway, Sherman, TX 75090; $7.50/hour; graduated from grad school and moved out of town

Jeff Legg:
- April 2008-January 2012; manager; The Nancy Boys, LLC; 122 North Aurora Street, Ithaca, NY 14850; (607) 645-0075; $50,000; death
- February 2006-February 2008; case worker; Samaritan Inn; 1710 North McDonald Street, McKinney, TX 75071; (972) 542-5302; compensation not known; fired
- January 2002-December 2005- sergeant; US Army; honorably discharged


3.      If plaintiff or plaintiff's decedent had ever been arrested or convicted of a crime in any

country, please state the date of the arrest or conviction, the charge(s), the name and address of

the court in which you were convicted, the offense you were charged with or were convicted of,

and the sentence or other outcome, (i.e., prison term, probation).

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it seeks information neither

relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery

of admissible evidence. Without waiving said objection, and subject to it, Plaintiff states she has

not been arrested or convicted of a crime and that decedent was arrested for public intoxication in Plano, Texas in January 2003 but she believes the charges were dropped. Decedent was also arrested for public intoxication in Richardson, Texas in December 2003, but the charges were dropped.

4.      If plaintiff or plaintiff's decedent had ever been involved in any other legal action, whether civil or criminal, as a plaintiff, defendant, or witness, please describe the nature of each such action, the name and address of the court where the action was pending, and the date of the action.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Without waiving said objection, and subject to it, Plaintiff states that Plaintiff and Plaintiff's decedent have not been involved in any other legal action.

## GENERAL HEALTH

5.      If plaintiff's decedent had ever sustained injuries to his body or incurred a disability, excluding any injuries or disability relating to the incidents in question, please state the date(s) and nature of such injury or disability, and for each such injury or disability, the names and addresses of each doctor, hospital or medical provider who rendered medical services of any nature (i.e., consultation, examination, or treatment).

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, and subject to it, Plaintiff directs Defendant to the medical records previously produced and those provided in Plaintiff's Response to Defendant's First Set

7

of Requests for Production of Documents and Things.  Plaintiff is unaware of any injuries or

disabilities to decedent other than those reflected in the said records.

6.      Did plaintiff's decedent have at any time since 2002 a personal physician?  If so, state

each physician(s) name and address and the reason for which plaintiff's decedent sought medical

care and/or treatment from them.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving said objection, and subject to it, Plaintiff directs Defendant to the medical

records previously produced and those provided in Plaintiff's Response to Defendant's First Set

of Requests for Production of Documents and Things.  Plaintiff further states that Plaintiff's

decedent saw Dr. Jason Fisch in Garland, Texas sometime prior to April 2007 for sleep issues.

Plaintiff also recalls in the summer of 2008, around the time she joined decedent in Ithaca, her

husband had one or two appointments with physicians at Guthrie Medical Centers in Ithaca, New

York and Sayre, Pennsylvania for sleep and/or intestinal issues. Plaintiff does not recall the

physicians' names or exact medical issues.

7.      If plaintiff's decedent had ever suffered from any chronic illness, disease, or mental

condition, please state the nature and time period(s) of such illness or disease and for each such

illness or disease, the names and addresses of each doctor, hospital, or medical provider who

rendered medical services of any nature (i.e., consultation, examination, or treatment).

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving said objection, and subject to it, Plaintiff directs Defendant to the medical

records previously produced and those provided in Plaintiff's Response to Defendant's First Set of Requests for Production of Documents and Things.

8.      Did plaintiff's decedent consult a physician for any other reason within a 12-month period prior to the earliest incident alleged in the complaint.  If so, for each such occasion, state the date, the name and address plaintiff's decedent consulted, the reason for the consultation, and a description of the treatment received.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, and subject to it, Plaintiff directs Defendant to the medical records previously produced and those provided in Plaintiff's Response to Defendant's First Set of Requests for Production of Documents and Things.

9.      Please state whether plaintiff or plaintiff's decedent has ever filed a claim or lawsuit against any person or entity as a result of an injury or disability, listing the name of the person or entity against whom you filed any claim or lawsuit as a result of such injury or disability.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, and subject to it, Plaintiff states that neither Plaintiff nor Plaintiff's decedent have filed a claim or lawsuit against any person or entity as a result of an injury or disability.

## **PRESENT CLAIM**

10.      State and describe in full and complete detail the basis for your allegations in paragraph 35 of the Complaint that Zolpidem should not have been prescribed to Mr. Legg, given his history of major depressive disorder, a suicide attempt, and substance abuse problems.

9

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it calls for legal opinion. Notwithstanding said objection, Plaintiff relies on the November 15, 2013 Declaration of Steven A. Fayer, M.D. and reserves the right to supplement this response in conjunction with expert disclosure.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the July 2015 reports and October 2015 depositions of her experts, Steven A. Fayer, M.D. and Robert Goldstein, M.D. to support her allegations about the deviations from the standard of care by the Syracuse VAMC from December 2010 through December 2011.

11.     State and describe in full and complete detail the basis for your allegations in paragraph 39 of the Complaint that the defendant departed from the standard of care for a patient diagnosed with PTSD, MDD, and substance abuse, who had a suicide attempt one year earlier.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it calls for legal opinion. Notwithstanding said objection, Plaintiff relies on the November 15, 2013 Declaration of Steven A. Fayer, M.D. and reserves the right to supplement this response in conjunction with expert disclosure.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the July 2015 reports and October 2015 depositions of her experts, Steven A. Fayer, M.D. and Robert Goldstein, M.D. to support her allegations about the deviations from the standard of care by the Syracuse VAMC from December 2010 through December 2011.

12.     State and describe in full and complete detail the basis for your allegations in paragraph 40 of the Complaint that Dr. Duque's departure from the standard of care was a substantial factor in causing Mr. Legg's death on January 3, 2012.

10

**ANSWER:** Plaintiff relies on the June 2, 2014 report of Jonathan L. Arden, M.D. and reserves the right to supplement this response in conjunction with expert disclosure.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the July 2015 report and October 2015 deposition of her expert, Jonathon L. Arden, M.D.

13.     State and describe in full and complete detail the basis for your allegations in paragraph 43 of the Complaint that due to the departure from the standards of care, Mr. Legg sustained conscious pain, suffering, loss of enjoyment of life, and anguish before he died.

**ANSWER:** Plaintiff's and decedent's family's observations of decedent suffering from increased depression, and his behavior and physical condition from December 28, 2011 to January 3, 2012, including expressions or observations of hopelessness, anger, instability, manic behavior, "abuse" of Ambien by taking more than the prescribed amount on December 30, 2011 and concern regarding the after effects of same, abuse of alcohol and marijuana, and combativeness with family.  Plaintiff reserves the right to supplement this response.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the description of the decedent's condition as presented in the Syracuse VAMC medical chart, as well as the depositions of Prashant Kaul, M.D. (April 2015), Robert Kotz, M.D. (April 2015), Gregory Moss, L.S.W. (June 2015), and the plaintiff (July 2015), and the observations by plaintiff, decedent's parents, Barbara and Max Legg, and brother, Troy Legg, that decedent was depressed, anxious, irritable, moody, and other symptoms associated with inadequately treated PTSD, MDD and SUD from December 2010 through January 2012.

14.     State and describe in full and complete detail the basis for your allegations in paragraph 47 of the Complaint that defendant's negligence was a substantial factor in bringing about

injuries to Nancy Legg, including shock and extreme emotional trauma due to her contemporaneous observations of the suffering and death of her husband in her presence.

**ANSWER:**   Plaintiff witnessed her decedent husband's deteriorating condition over the last five days of his life while he was in possession of the Ambien negligently prescribed by the VA, including:

- Decedent's "abuse" (taking more than the prescribed amount) of Ambien in conjunction with drinking and smoking marijuana on December 30, 2011, and decedent's physical aches, pains, and reported dry heaves on the day following this "abuse," as well as decedent's anxiety and concern about the harm Ambien could do to his liver, all of which caused plaintiff to worry and experience anxiety about decedent's physical and emotional well-being;

- Plaintiff's own anxiety and rising panic that her husband would leave the house and attempt to drive in a "wasted" condition to find more marijuana in the early morning hours of January 3, 2012, as well as her anxiety and concern when she discovered he had taken an unknown amount of unidentified medication and passed out shortly thereafter;

- Plaintiff's own rising panic and anxiety as she tried to wake decedent at approximately 5:50 a.m. but could not do so, then tried to turn decedent over so that he would not asphyxiate, but could not do so;

- Plaintiff's own rising panic and anxiety around 6:30 a.m. as she saw decedent's lips were blue and he had stopped making breathing sounds;

- Plaintiff's own rising panic, anxiety, and mental and emotional trauma as she retrieved the cell phone she had hid from her husband, found she could not figure out how to dial his phone, then ran to get hers in order to call 911, and then the trauma of attempting

CPR as directed by an operator over the phone while she waited for emergency personnel to arrive, which attempt at CPR lasted approximately 12 minutes;

- Plaintiff's extreme emotional trauma as she had to leave her husband in this condition – with blue lips, blotchy skin, and apparently not breathing – to downstairs and let paramedics into her house, then watch as the paramedics administered shocks and performed CPR in an unsuccessful attempt to resuscitate decedent;

- Plaintiff's extreme emotional trauma as she was taken in a separate car to the hospital in Sayre, Pennsylvania where paramedics were simultaneously taking decedent by ambulance; and

- Plaintiff's extreme emotional trauma in observing decedent's entry to the emergency room and continued efforts by hospital personnel to resuscitate decedent, then hearing that her husband was dead and realizing that she had witnessed his death and failed to resuscitate him.

**SUPPLEMENTAL ANSWER:** Due to the departure from the standards of care set forth above, the Plaintiff, Nancy Legg, was deprived of her husband's society, affection, assistance, companionship, services, etc., from December 2010 through his death in January 2012, as set forth in her Affidavits/Declarations (December 2013 and January 2016) and her deposition (July 2015).

## INJURIES ALLEGED

15.    State in full and complete detail all injuries, illnesses or disabilities claimed to have been received or suffered by plaintiff's decedent as a result of the incidents alleged in the Complaint and state when such injuries, illnesses or disabilities first manifested themselves.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad and unduly burdensome.  Without waiving said objection and subject to it, Plaintiff states that subsequent to his visit with Dr. Duque, Plaintiff's decedent husband was depressed and experienced other physical and mental conditions as set forth in answer to interrogatory number 13, and died on January 3, 2012.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the description of the decedent's condition as presented in the Syracuse VAMC medical chart, as well as the depositions of Prashant Kaul, M.D. (April 2015), Robert Kotz, M.D. (April 2015), Gregory Moss, L.S.W. (June 2015), and the plaintiff (July 2015), and the observations by plaintiff, decedent's parents, Barbara and Max Legg, and brother, Troy Legg, that decedent was depressed, anxious, irritable, moody, and other symptoms associated with inadequately treated PTSD, MDD and SUD from December 2010 through January 2012.

16.     State in full and complete detail all injuries, illnesses or disabilities claimed to have been received or suffered by plaintiff as a result of the incidents alleged in the Complaint and state when such injuries, illnesses or disabilities first manifested themselves.

**ANSWER:**  Plaintiff objects to the interrogatory to the extent that it is over-broad and unduly burdensome.  Without waiving said objection and subject to it, Plaintiff states that during the period from December 28, 2011 through approximately 8:00 a.m. on January 3, 2012, plaintiff experienced the injuries described at interrogatory number 14. From January 3, 2012 to the present, plaintiff states that she has suffered grief, depression, anxiety, and financial and emotional stress, as well as the loss of society and companionship of her husband on a varying basis and in varying degrees of intensity, but on a daily basis, as a result of the death of her husband.

14

**SUPPLEMENTAL ANSWER:** Due to the departure from the standards of care set forth above, the Plaintiff, Nancy Legg, was deprived of her husband's society, affection, assistance, companionship, services, etc., from December 2010 through his death in January 2012, as set forth in her Affidavits/Declarations (December 2013 and January 2016) and her deposition (July 2015).

17.     Identify in detail the specific damages plaintiff's decedent sustained as a result of the allegations contained in the Complaint, including but not limited to, an itemized list of any claim for monetary damages.

**ANSWER:**  Plaintiff's decedent suffered conscious pain and suffering from December 28, 2011 to his death on January 3, 2012 in the amount of $1,238,815. Plaintiff on behalf of plaintiff's decedent also claims funeral expenses of $11,185.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the description of the decedent's condition as presented in the Syracuse VAMC medical chart, as well as the depositions of Prashant Kaul, M.D. (April 2015), Robert Kotz, M.D. (April 2015), Gregory Moss, L.S.W. (June 2015), and the plaintiff (July 2015), and the observations by plaintiff, decedent's parents, Barbara and Max Legg, and brother, Troy Legg, that decedent was depressed, anxious, irritable, moody, and other symptoms associated with inadequately treated PTSD, MDD and SUD from December 2010 through January 2012.

18.     Was an investigation made by you, or on your behalf of any matter relating to the incidents complained of in this action? If so, for each investigation state the name, address, capacity and qualifications of each person who made it.

**ANSWER:**  No.

15

19.     Do you contend that the decedent underwent a period of conscious pain and suffering? If so, describe the nature and extent of the pain and suffering and its duration, describe any statements or utterances made by the decedent which you contend evidence such pain and suffering, identifying any other information upon which your contention is based including any documents that support your contention concerning the decedent's conscious pain and suffering.

**ANSWER:** See Plaintiff's answer to interrogatory number 13. Decedent stated on December 30, 2011 that he wanted to die but he wouldn't do anything because he did not want to put plaintiff through that. Decedent exhibited intense frustration and anger towards his parents on December 30, 2011, while they visited plaintiff and decedent's home for the holidays. Decedent's emotional reaction resulted in him telling his parents they should find another place to stay, and them doing so. After his parents left, decedent was upset, agitated, and tense. Later that night, decedent told plaintiff he had taken six Ambien and soon after she saw him drinking and smoking marijuana. On January 2, 2012, decedent stated he missed being in combat, asked plaintiff if she thought he was crazy, and told her he felt crazy. He also asked decedent what she thought about him joining the French Foreign Legion. As indicated by these statements, decedent's behavior was alternately depressed, angry, and manic, among other things.

**SUPPLEMENTAL ANSWER:** In addition to the foregoing response, plaintiff relies on the description of the decedent's condition as presented in the Syracuse VAMC medical chart, as well as the depositions of Prashant Kaul, M.D. (April 2015), Robert Kotz, M.D. (April 2015), Gregory Moss, L.S.W. (June 2015), and the plaintiff (July 2015), and the observations by plaintiff, decedent's parents, Barbara and Max Legg, and brother, Troy Legg, that decedent was depressed, anxious, irritable, moody, and other symptoms associated with inadequately treated PTSD, MDD and SUD from December 2010 through January 2012.

16

## **WITNESSES**

20.     With regard to the incidents alleged in the complaint, identify any expert witnesses which you believe support your allegations of negligence in the care and treatment provided to plaintiff's decedent.

     (a)     The expert's address and phone number;

     (b)     A detailed description of his/her opinion supporting your allegations of negligence in the medical care and treatment provided to plaintiff's decedent;

     (c)     Whether any statements and/or reports, written or oral, have been made by the expert identified, and if so, identify when the statements and/or reports were made, to whom they were made and who presently is in possession of such statements and/or reports; and

     (d)     whether the expert will testify at trial and if so the substance of his or her testimony and whether the testimony will be live or by videotape.

**ANSWER:**  Plaintiff has not yet determined which, if any, experts will be used.  Plaintiff reserves the right to supplement this response in accordance with the Scheduling Order.

21.     To the extent not already disclosed, identify all fact witnesses you intend to call at trial and for each witness listed, include the following information:

     (a)     the name, address and phone number of the individual;

     (b)     the substance of his/her testimony;

     (c)     list all exhibits intended to be introduced through the witness listed; and

     (d)     identify any statements made by that individual, and if so, describe the type of statement (written or oral), the date and time of the statement, to whom the statement was made, and who presently is in possession of any such statement.

**ANSWER:**  Plaintiff has not yet determined which, if any, experts will be used at trial.  Plaintiff reserves the right to supplement this response in accordance with the Scheduling Order.

22.     If any investigation of the incidents alleged in the complaint has been made by you or your attorney or any other person on your behalf, or by any insurance company or other person or organization conducting each such investigation, state the date or dates the investigation was made and, if the results have been reduced to writing, state when, where and by whom each writing was made and the name and address of the person or organization now having possession or custody thereof.

**ANSWER:** Plaintiff objects to the interrogatory to the extent that it seeks information constituting or containing information prepared in anticipation of or as a result of litigation or which is otherwise protected by the work product doctrine or other available privilege or protection.  Without waiving said objection, and subject to it, Plaintiff states that to the best of my knowledge, no investigation has been conducted.

## VERIFICATION

I, Nancy Legg, individually and as Administratrix of the Estate of Jeffrey Max Legg, have read the foregoing Responses, which are based on a diligent and reasonable effort by me to obtain information currently available.  I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available.  Subject to these limitations, these Responses are true to the best of my present knowledge, information, and belief.

Subscribed and sworn to under the pains and penalties of perjury this 12th day of January, 2015.

/s/ Nancy Legg
Nancy Legg

18

As to Objections:

/s/ Carla N. McKain
Carla N. McKain, Esq.
MCKAIN LAW, PLLC
*Attorneys for Plaintiffs*
136 E. State Street
Ithaca, NY  14850
Ph: 607-277-4433
Fax: 607-277-4432
Email: cmckain@mckainlawpllc.com

/s/ Oliver N. Blaise, III
Oliver N. Blaise, III, Esq.
COUGHLIN & GERHART, LLP
*Attorneys for Plaintiff*
99 Corporate Drive
Binghamton, NY  13904
Phone: (607) 723-9511
Fax: (607) 723-1530
Email: oblaise@cglawoffices.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------

NANCY LEGG, Individually and as Administratrix
of the Estate of Jeffrey Max Legg,

    Plaintiff,

  v.              Civil Action No. 3:14-CV-0838
                   (GTS/DEP)

UNITED STATES OF AMERICA,

    Defendant.

----------------------------------------------------------------

### PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Nancy Legg,

individually and as Administratrix of the Estate of Jeffrey Max Legg, hereby responds to the

Second Set of Interrogatories propounded by the Defendant as follows:

### GENERAL RESPONSES AND OBJECTIONS

   Each of the Plaintiffs' responses, in addition to any specifically stated objections, is

subject to and incorporates the following general responses and objections.  The assertion of the

same, similar, or additional objections, or a partial response to any individual request does not

waive any of the Plaintiffs' general responses and objections.

   1.  The following responses reflect the current state of the Plaintiff's knowledge,

understanding and belief respecting matters about which inquiry has been made.  The Plaintiff

expressly reserves her right to supplement or modify these responses with such pertinent

information as she may hereafter discover or as may be informed by the opinions of experts

retained by the parties to testify in the trial of this matter, and will do so to the extent required by

the Federal Rules of Civil Procedure.  The Plaintiff expressly reserves the right to rely on, at any

time, including trial, subsequently discovered documents and/or materials that have been produced promptly upon discovery.

2.      The Plaintiff objects to any interrogatory that seeks information constituting or containing information concerning communications between the Plaintiff and her counsel, which are protected by the attorney-client privilege.

3.      The Plaintiff objects to any interrogatory that seeks information constituting or containing information prepared in anticipation of or as a result of litigation or which is otherwise protected by the work product doctrine or other available privilege or protection.

4.      The inadvertent provision of information or the production by the Plaintiff of documents pursuant to Fed. R. Civ. P. 33(d) containing information protected from discovery by the attorney-client privilege, work product doctrine or any other applicable privilege, shall not constitute a waiver of such privileges with respect to that information or those of any other documents.  In the event that inadvertent production occurs, the Defendant shall return all inadvertently produced documents to the Plaintiff upon request, and/or shall make no use of the contents of such information or documents nor premise any further discovery on information learned therefrom.

5.      The Plaintiff objects to any interrogatory to the extent that it purports to impose upon her any obligation beyond those imposed by the Federal Rules of Civil Procedure, including, but not limited to, any interrogatory that exceeds the scope of Federal Rules of Civil Procedure 26(b) and 33.

6.      The Plaintiff objects to these interrogatories to the extent that they are over-broad, unduly burdensome, vague, ambiguous, confusing, require speculation to determine their meaning or use imprecise specifications of the information sought.

2

7.     The Plaintiff objects to any interrogatory to the extent that it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

8.     The Plaintiff objects to any interrogatory as unduly and unnecessarily burdensome to the extent that it seeks information that is a matter of public record, already in the Defendant's possession, or otherwise readily available to the Defendant, and, therefore, may be accessed and obtained by the Defendant with less effort than the Plaintiff would expend to identify and provide the requested information.

9.     None of the objections or responses contained herein is an admission concerning the existence of any documents or materials, the relevance or admissibility of any documents, materials or information, or the truth or accuracy of any statement or characterization contained in Defendant's First Set of Interrogatories. The Plaintiff's written responses are made without waiving, but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy, materiality or any other proper grounds, to the use of the information provided herein, in whole or in part, in any subsequent proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other discovery requests involving or relating to the subject matter of these requests; and (c) the right at any time to revise, correct, add or clarify any of the responses provided herein.

10.     The Plaintiff objects to any interrogatory to the extent it is a contention interrogatory.  Pursuant to Fed. R. Civ. P. 33(c), the Plaintiff objects to any such interrogatory on the grounds that it is premature in light of the present early stage of discovery.  The Plaintiff expects to receive documents through discovery that will concern and provide information responsive to such interrogatories.   Because Fed. R. Civ. P. 26 imposes a duty of

supplementation, complying with such interrogatories would require the Plaintiff to continually supplement her responses each time she receives an additional document or information concerning the subject contention on which the interrogatory seeks information.   Doing so would cause the Plaintiff to suffer unnecessary burden and expense and would not serve to narrow the issues that are in dispute. *See, e.g, Nestle Foods Corporation, v. Aetna Casualty and Surety Company,* 135 F.R.D. 101, 110-111 ( D.N.J. 1990); *Conopco, Inc. v. Warner-Lambert Co.*, 2000 WL 342872, * 4 (D.N.J. 2000); *B. Braun Medical Inc., v. Abbot Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).   Accordingly, in response to any such contention interrogatory, the Plaintiff will provide a response encompassing the current state of her knowledge, belief, and understanding, but reserve the right to supplement her interrogatory response pursuant to Fed. R. Civ. P. 26 at the conclusion of discovery, both as to the merits of this action and with respect to experts designated to testify at trial.

11.     The Plaintiff objects to any interrogatory that seeks information that is already in the Defendant's possession.

12.     The Plaintiff states that the answer to many of the Defendant's interrogatories may, in substantial part, be derived or ascertained from the Plaintiff's records as well as documents produced by the Defendant in discovery.   Pursuant to Fed. R. Civ. P. 33(d), as the burden of deriving or ascertaining the answer to such interrogatories from such records and documents is substantially the same for the Defendant, the Plaintiff will respond to such interrogatories by identifying the documents and records from which the answer may be ascertained.

13.     Unless otherwise indicated, the Plaintiff will not provide information encompassed by her general responses and objections or by her specific objections set forth below.

## **GENERAL HEALTH**

1.     Was plaintiff NANCY LEGG actively employed, for compensation, on the date of the incidents alleged in the complaint? If so, for each employment, state the name, address and business of his employer, the inclusive dates of employment, rate of pay, or the method by which compensation was determined.

**ANSWER:**   I have been a teacher in the Ithaca City School District, 400 Lake Street Ithaca, NY 14850.  I have been employed from 9/1/2008 to the present, and my 2014-2015 salary was $46,519.

2.     Has NANCY LEGG missed any work as a result of injuries alleged in the complaint? If so, state each date on which he was absent from work, the total number of days or hours lost, and whether he was paid during his absences and, of so, for what reason and in what amount?

**ANSWER:**   Plaintiff objects to this interrogatory to the extent that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, and subject to it, Plaintiff states that she was out of work January 3, 2012 to January 16, 2012 to deal with planning, traveling to the funeral, and time to grieve the loss of her husband. She also took 5-10 sporadic sick days off over the course of the next three school years as grieving days.

3.      Does plaintiff NANCY LEGG claim any impairment of her earning capacity or loss of future earnings as a result of injuries alleged in the complaint?  If so, please state in complete detail the basis for this claim.

**ANSWER:**   Not my personal earnings. The tax returns show decreased earnings for the household.  In addition, I have received some financial support from my husband's parents for my mortgage payment following my husband's death.   See attached email and document showing payments.

4.      Is there any activity in which plaintiff NANCY LEGG could engage in prior to the medical care/treatment which is the subject of the complaint which she cannot now engage as a result of injuries alleged in the complaint?  If so, for each activity, state a description of the activity, in what way the accident or injuries restricted the activity, and whether she will be able to engage in the activity in the future, and, if so, when.

**ANSWER:**   None.

5.      State whether plaintiff had experienced any of the injuries, illnesses, or disabilities listed in the answer to interrogatory no. 16 of the Government's first set of interrogatories prior to December 28, 2011. If so, state and describe in full and complete detail each injury, illness, or disability, and the treatment received.

**ANSWER:**   I have experienced no injuries, illnesses or disabilities listed in my answer to interrogatory no. 16.

6.      State and describe in full and complete detail all medical care and/or treatment sought and received for treatment of the injury, illnesses, or disabilities which plaintiff has alleged to have suffered as a result of the incidents in the complaint.

**ANSWER:**   I attended six young widow support group sessions provided through Hospice in September to October of 2012.  I had three sessions with an EAP counselor in the Spring of 2012. I also purchased and read multiple books regarding grief.  See attached receipts.

## VERIFICATION

I, Nancy Legg, individually and as Administratrix of the Estate of Jeffrey Max Legg, have read the foregoing Responses, which are based on a diligent and reasonable effort by me to obtain information currently available.  I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available.  Subject to these limitations, these Responses are true to the best of my present knowledge, information, and belief.

Subscribed and sworn to under the pains and penalties of perjury this 19th day of June, 2015.

/s/ Nancy Legg
Nancy Legg

As to Objections:

/s/ Carla N. McKain, Esq.
Carla N. McKain, Esq.
MCKAIN LAW, PLLC
*Attorneys for Plaintiffs*
136 E. State Street
Ithaca, NY  14850
Ph: 607-277-4433
Fax: 607-277-4432
Email: cmckain@mckainlawpllc.com

/s/ Oliver N. Blaise, III
Oliver N. Blaise, III, Esq.
COUGHLIN & GERHART, LLP
*Attorneys for Plaintiff*
99 Corporate Drive
Binghamton, NY  13904
Phone: (607) 723-9511
Fax: (607) 723-1530
Email: oblaise@cglawoffices.com