UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NANCY LEGG, Individually and as Administratrix
of the Estate of Jeffrey Max Legg,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 3:14-CV-838
(DEP)

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINITFF'S CROSS MOTION

Date: May 27, 2016

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

By: *Michael D. Gadarian*
*Assistant United States Attorney*
*Bar Roll No. 517198*

*William F. Larkin*
*Assistant United States Attorney*
*Bar Roll No. 102013*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... i

I. INTRODUCTION ............................................................................................................1

II. ARGUMENT ...................................................................................................................1

    A.  Plaintiff Has Not Established Jurisdiction Over Her New Claims ..............................1

    B.  Even if this Court Has Jurisdiction over the New Claims,
        Plaintiff Should not be Permitted to Amend ..............................................................6

III. CONCLUSION ..............................................................................................................10

# TABLE OF AUTHORITIES

**Case Law**

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985) .......................................... 9

*Baruch v. Baruch*, 224 A.D.2d 337 (1st Dep't 1996) .......................................... 9

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir.1990) .......................................... 7

*Croman v. United States*, 94 Fed. Cl. 157 (2010) .......................................... 9

*Dugan v. United States*, No. C06-5705RBL, 2008 WL 65504
    (W.D. Wash. Jan. 4, 2008) .......................................... 2

*Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44 (2d Cir. 1983) .......................................... 6

*Foman v. Davis*, 371 U.S. 178 (1962) .......................................... 6

*Goodman v. United States*, 298 F.3d 1048 (9th Cir. 2002) .......................................... 5

*Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir.2003) .......................................... 6

*Hunter v. Veterans Admin. of United States*, No. 78-cv-321, 1981 WL 380702
    (N.D.N.Y. Jan. 7, 1981) .......................................... 9

*Keene Corp. v. United States*, 700 F.2d 836 (2d Cir. 1983) .......................................... 4, 5

*Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177 (E.D.N.Y. 2013) .......................................... 10

*O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842 (2d Cir. 1984) .......................................... 1

*Priestley v. American Airlines, Inc.*, No. 89 Civ. 8265, 1991 WL 64459
    (S.D.N.Y. Apr.12, 1991) .......................................... 7

*Rise v. United States,* 630 F.2d 1068 (5th Cir. 1980) .......................................... 4

*Schunk v. United States*, 783 F. Supp. 72 (E.D.N.Y. 1992) .......................................... 1

*Smiley v. Artisan Builders*, Civ. A. No. 13-7411, 2015 WL 996966
    (E.D. Pa. Mar. 4, 2015) .......................................... 2

*State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 Fed. App'x 36 (2d Cir. 2006) .......................................... 9, 10

*White v. Verizon*, No. 5:06–CV–0617 (GTS/GHL), 2009 WL 3335897
(N.D.N.Y. Oct. 15, 2009) .......................................................................................... 10

*Zubulake v. UBS Warburgh LLC*, 231 F.R.D. 159 (S.D.N.Y. 2005) ..................................... 7

**Statutes**

28 U.S.C. § 1346(b) ("FTCA") ......................................................................................... 4, 5

28 U.S.C. § 2675 .................................................................................................................. 2

Fed. R. Civ. P. 15 ............................................................................................................ 1, 6

Fed. R. Civ. P. 16 ................................................................................................................ 6

I.  **INTRODUCTION**

Sixteen months after the deadline to amend pleadings, five months after the deadline to file motions, and one week after the deadline for motions *in limine*, Plaintiff has filed a "cross motion" seeking to amend her complaint in this Federal Tort Claims Act ("FTCA") case. Plaintiff seeks to add new causes of action for medical malpractice and a loss of consortium claim.[1] Plaintiff's motion should be denied because: (1) this Court lacks jurisdiction over the proposed new claims, and (2) the application to amend is untimely and amendment would prejudice the United States.

II. **ARGUMENT**

   **A. Plaintiff Has Not Established Jurisdiction Over Her New Claims**

Plaintiff's proposed amended complaint rests on the faulty premise that her administrative claims exhausted her new claims. They did not, and it is impossible for Plaintiff to amend her way around the jurisdictional defect created by her strategic decision as to what claim to present to the agency. *Schunk v. United States*, 783 F. Supp. 72, 82 (E.D.N.Y. 1992) ("Nor can [the] jurisdictional defect [of failing to allege incidents of malpractice in an administrative claim] be cured by 'relating back' under Fed. R. Civ. P. 15(c). 'Relation back' . . . has no bearing upon filing an administrative claim under the FTCA."); *see also generally O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir. 1984) ("The FTCA, as a statute waiving sovereign immunity, must be complied with strictly. If plaintiff were allowed to amend his *ad damnum* clause based upon the minimal showing he made in the district court, we would, in effect, be substituting the liberal pleading requirements of Federal Rule of Civil Procedure 15

---

[1] Because Plaintiff has filed a "cross motion" seeking affirmative relief, the government believes it is entitled to respond. To the extent leave is required, the government respectfully requests such leave.

for the narrower requirements of § 2675(b). This we may not do.") (citations omitted). Thus, Plaintiff cannot even attempt to amend unless she first establishes jurisdiction.

The "incident" alleged in the administrative claims was Dr. Duque's prescription of Ambien to Mr. Legg on December 28, 2011. Plaintiff's argument that by summarizing other care and treatment in the SF-95s she exhausted every conceivable claim of malpractice during the year-long time-period covered by those records defies credulity. Critically, <u>Plaintiff acknowledges that the facts describing Mr. Legg's prior treatment were not alleged in the administrative claim as "deviations from the standard of care . . . ."</u> Pl. Br. at 14 (emphasis added to quoted section). Of course, alleged incidents of malpractice (i.e. alleged deviations from the standard of care) are precisely what Plaintiff is required to exhaust to establish jurisdiction. 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented <u>the claim</u> to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . .") (emphasis added).[2] Here, the description of the "claim" was authored by sophisticated counsel, supported by expert declaration, and defines the scope of what was exhausted.

Nor can the Department of Veterans Affairs ("VA") response to the administrative claims be fairly read as the VA acknowledging that the entirety of Mr. Legg's care and treatment had been presented as a claim. The VA described the "claim" as concerning only the December 28, 2011 appointment and resulting Ambien prescription. Pl.'s Resp. Ex. B. Plaintiff nevertheless

---

[2] A loss of consortium claim, as a derivative claim, requires exhaustion of both the underlying negligence claim and the spouse's loss of consortium claim. *See, e.g., Smiley v. Artisan Builders*, Civ. A. No. 13-7411, 2015 WL 996966 (E.D. Pa. Mar. 4, 2015) (dismissing loss of consortium claim for failure to exhaust); *Dugan v. United States*, No. C06-5705RBL, 2008 WL 65504 (W.D. Wash. Jan. 4, 2008) ("To preserve a right to bring a derivative claim (albeit an independent claim), such as a loss of consortium claim under the Federal Tort Claims Act, a spouse must also exhaust administrative remedies before a federal court has jurisdiction of those claims.") (citation omitted).

2

argues that VA acknowledged that the claim was broader because the VA said that: (1) its "review of the medical records fails to indicate any improper or negligent treatment on the part of Dr. Duque or any other VA employees" and (2) "there is no indication in the available records" that the prescription of Ambien was a deviation from accepted standards. Plaintiff's argument is too clever by half. The VA's statements are consistent with a rejection of Plaintiff's alleged incident of malpractice (i.e. that Dr. Duque was negligent). Plaintiff asserted (incorrectly) that Dr. Duque was a resident that should have been supervised by an attending physician but was not. Thus, the VA's statement that neither Dr. Duque "or any other VA employees" were negligent does not show that the VA recognized that Plaintiff was alleging that everything done as part of Mr. Legg's care and treatment was malpractice. Further, as Plaintiff points out and as the government agrees, to what extent Dr. Duque was required to review the medical records before prescribing Ambien, and whether she should have prescribed Ambien to someone with Mr. Legg's treatment history and presentation, is part of the exhausted claim. The records therefore needed to be reviewed by the VA in that context.

Plaintiff also argues that it is "virtually impossible to separate the care rendered by the VA on December 28, 2011 from the care leading up to that date because the 2011 treatment directly bears on Mr. Legg's condition at his last VA visit . . . ." Pl. Br. at 15 n.15. Again, the government does not seek to limit Plaintiff from offering evidence that Dr. Duque should have reviewed the medical records and decided against prescribing Mr. Legg Ambien (*see* United States' Mem. of Law (dkt. 47(2)) at 11 n.7 ("Here, the administrative claim mentions Mr. Legg's treatment prior to December 28, 2011 only to support the expert's declaration (and counsel's narrative) that Dr. Duque should not have prescribed someone with that profile Ambien and should have spoken with Mr. Legg's family. Neither the administrative claim itself nor the expert

3

declaration links Mr. Legg's treatment leading up to his December 28, 2011 visit to malpractice by those providers."). That is far different, of course, than Plaintiff being permitted to attempt to establish liability in connection with prior treatment decisions by different providers.

In arguing that jurisdiction exists over all "claims of malpractice which occurred between December 2010 and Mr. Legg's death," Pl. Br. at 13, Plaintiff largely ignores the case law presented by the United States in its motion *in limine.* Even the cases cited by Plaintiff do not support her position.

For example, Plaintiff cites *Rise v. United States,* 630 F.3d F.2d 1068 (5th Cir. 1980). The court in *Rise* noted that "a Federal Tort Claims Act suit can be based on particular facts and theories of liability only when those facts and theories can be considered part of the plaintiff's administrative claim." *Id.* at 1071. That standard was met in *Rise* because the description of the incident in the administrative claim was that the Army was negligent in failing to diagnose and treat a condition starting in December 1972 and January 1973, ultimately leading to Plaintiff's death. The administrative claim in *Rise* specifically referenced a transfer to a different facility in May 1973, so the plaintiff's claim of failure to diagnose and treat the condition fairly included the decision to transfer to the different facility. *Id.* at 1071-72. *Rise* merely holds that an administrative claim founded upon a continued failure to diagnose and treat includes claims of malpractice <u>after</u> the onset of the alleged failure. The Fifth Circuit in *Rise* did not hold, or even imply, that alleging an incident of malpractice exhausts all potential claims for prior treatment.

Plaintiff's reliance on *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir. 1983), is also misplaced. In *Keene,* a company filed suit against the United States essentially alleging that the United States was liable for the cost of more than 14,000 personal injury and wrongful death actions against the company. Although the unique factual circumstances presented in *Keene*

4

make it of dubious relevance in a more traditional FTCA case, the Second Circuit did note that it is insufficient to exhaust a claim simply to invite "the government to sift through the record" to ascertain what the claims are. *Id.* at 842. Here, Plaintiff's assertion that any reasonable investigation of the alleged incident of malpractice by Dr. Duque should have put the VA on notice of claims against other providers over the year leading up to the incident is a prohibited invitation to "sift through the record" to ascertain the claims. Of course, the notion that any reasonable investigation would necessarily have included all of the care and treatment at the VA is patently belied by Plaintiff's own expert declaration submitted with the administrative claim which presented no such allegations of malpractice.

Similarly, *Goodman v. United States*, 298 F.3d 1048 (9th Cir. 2002), does not support Plaintiff's jurisdictional argument. *Goodman* falls within the distinguishable context of informed consent claims pursued in connection with an exhausted substantive claim of malpractice. Although rejecting a categorical rule that informed consent is always exhausted with substantive malpractice claims, *Goodman* held that the informed consent claim in that case was exhausted by a *pro se* plaintiff's broad description of the incident. In addition to the distinguishing factor that the plaintiff in *Goodman* was unrepresented, *Goodman* is also different because the agency denial letter said that the decedent was "well informed of [the] risk[s]," showing that the agency understood the claim to implicate consent. *Id.* at 1056. Here: (1) the claims of malpractice that Plaintiff seeks to add to the Complaint are not inherently related to the claim that Dr. Duque was negligent on December 28, 2011; (2) Plaintiff was represented by counsel and an expert declaration defining the claim was submitted with the SF-95s; (3) neither the Complaint nor the interrogatory responses contains any indication that Plaintiff intended to allege other claims; and

5

(4) the VA's response to the SF-95s makes reference only to the alleged incident of malpractice concerning Dr. Duque.

### B. Even if this Court Has Jurisdiction over the New Claims, Plaintiff Should not be Permitted to Amend

If this Court concludes that it would have jurisdiction over the proposed additional claims, it should still deny Plaintiff's motion to amend under Rules 15 and 16.

Rule 15(a)(2) provides that, after the time period for amendment as of right has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave where justice so requires." Fed. R. Civ. P. 15. Among the reasons that a court may not permit amendment include "undue delay, bad faith or dilatory motive on the part of the movant, . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).[3]

With respect to delay, "the longer the period of unexplained delay, the less will be required of the nonmoving party in terms of showing prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).[4] Further, "where a significant period of time has passed

---

[3] Although Plaintiff fails to meet the standards for amendment under Rule 15, this Court should also balance the importance of adherence to its own scheduling order. "Where a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir.2003) (quoting Fed.R.Civ.P. 16(b)). Here, the first paragraph of the scheduling order provides that "**THE DEADLINES SET IN THIS SCHEDULING ORDER SUPERSEDE THE DEADLINES SET FORTH IN FED. R. EVID. 26(a)(3) AND ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE.** *See* **Fed. R. Civ. P. 16(b).**" (dtk. 9 ¶ 1) (emphasis in original).

[4] Following the civil case management conference on October 17, 2014, this Court set a deadline of January 9, 2015 for joinder and amendment of pleadings and issued a corresponding Uniform Pretrial Scheduling Order. Dkts. 7, 9 ¶ 5 ("Any application to amend any pleading in this action shall be made on or before **January 9, 2015**.") (emphasis in original). The general motion deadline was "**December 1, 2015**," later extended to December 18, 2015. *Id.* (emphasis in original); Nov. 5, 2015 Text Order. In anticipation of trial, this Court wrote a letter to both parties indicating that "[a]ny motions *in limine* must be filed on or before **May 16, 2016**." (emphasis in original). Previously, the scheduling order noted that

6

between the filing of the pleading and the motion to amend, 'the burden is upon the party who wished to amend to provide a satisfactory explanation for the delay.'" *Zubulake v. UBS Warburgh LLC*, 231 F.R.D. 159 (S.D.N.Y. 2005) (defendant not permitted to amend answer where there was an unexplained 22-month delay in asserting the defense, decision to omit the defense was presumably strategic, and it would prejudice the plaintiff to reopen discovery and postpone the trial) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990) ("The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.")); *see also Priestley v. American Airlines, Inc.*, No. 89 Civ. 8265, 1991 WL 64459, at *1 (S.D.N.Y. Apr.12, 1991) ("[L]eave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading.").

Here, Plaintiff offers no excuse for the delay in seeking to amend other than a general assertion that Plaintiff assumed that the government knew that she had expanded the case to cover areas over which there was no jurisdiction and that were not in the Complaint. Pl. Br. at 23 (amendment not sought sooner because of the "obvious nature of the deviations explicitly set forth in plaintiff's expert reports and at the plaintiffs' experts' depositions . . . ."). This explanation flips the appropriate standard on its head. Plaintiff's decision not to seek leave to amend, at the latest in June 2015 when her experts issued reports alleging malpractice far outside the scope of the Complaint, was presumably a strategic one. Whether out of a concern that

---

"**MOTIONS IN LIMINE MAY NOT OTHERWISE BE FILED WITHOUT LEAVE OF THE COURT.**" Dkt. 9 ¶ 12F.

7

seeking to amend would elicit the jurisdictional argument that the government has raised in its motion *in limine* or for some other reason, Plaintiff's delay is unjustified.

Nor could the government's expert reports have convinced Plaintiff that there was implicit "consent" to expand the scope of the lawsuit. Both of the government's psychiatric experts prepared reports responding to the malpractice allegation in the Complaint. Pl. Exs. F (dkt. 54-6 at 2) (Horwitz Rpt. "You asked for my opinion 1. Whether it was a breach of the accepted standards of medical care for Dr. Duque to not interview the patient's wife during the 12/28/11 visit and, 2. Whether it was a breach of the accepted standards of medical care for Dr. Duque to prescribe a thirty (30) [day] supply of Ambien to Ms. Legg on 12/28/11.") & H (dkt. 54-8 at 2) (Annas Rpt. "I was specifically asked to address if a breach occurred by Dr. Duque in the two following areas regarding his Syracuse Veteran's Administration Medical Center Outpatient Clinic visit of 12/28/2011: (1) by not interviewing the patient's wife, Nancy Legg, during the visit and (2) by prescribing a 30 day supply of Zolpidem (Ambein) for Mr. Legg."). Rule 15 requires the Plaintiff to seek consent to an amendment, not ride under the radar hoping that the government and/or the court fail to raise the issue of subject matter jurisdiction.

As to prejudice, the government's discovery was structured around the exhausted and pleaded claim of negligence, and the government's affirmative defenses were similarly tailored. Had Plaintiff originally pleaded the claims she now seeks to pursue or amended within the time period provided by the scheduling order, the government would have structured discovery differently, including as necessary to support a discretionary function defense. As mentioned, the government's psychiatric experts prepared reports on the allegation in the Complaint. Moreover, Plaintiff did not disclose a licensed clinical social worker as an expert, but Plaintiff's new claims apparently include malpractice by the VA social worker involved in Mr. Legg's

treatment. *See generally Baruch v. Baruch*, 224 A.D.2d 337 (1st Dep't 1996) (malpractice claim against social worker requires establishing standard of professional care applicable to social workers). As to the proposed loss of consortium claim, the government took no discovery from Plaintiff regarding her new allegations that she was deprived of Mr. Legg's "society, affection, assistance, companionship, services, etc. from December 2010 through his death in January 2012." Plaintiff also failed to mention any facts supporting that new claim in her interrogatory response. U.S. Mem. Ex. E (dkt. 47(8)). The government is prepared to proceed to trial, and amendment at this juncture will prejudice the defense.

Plaintiff cites two cases in support of her motion to amend to add the new malpractice claims. Neither supports her position. First, *Hunter v. Veterans Admin. of United States*, No. 78-cv-321, 1981 WL 380702 (N.D.N.Y. Jan. 7, 1981), involved a plaintiff's discovery of new evidence at a deposition followed by a motion to amend shortly thereafter. The new claim in *Hunter* related to the original incident itself (i.e. an operation and post-operative care), not prior care as is the case here. Second, *Croman v. United States*, 94 Fed. Cl. 157 (2010), concerned the government's unsuccessful attempt to reopen fact discovery related to its fraud counterclaims. *Croman* supports the United States' position here. A party cannot make a deliberate choice as a matter of litigation strategy and then switch horses just before the finish line because it has become concerned over the merits of the original case. *Id.* at 161-62.

In circumstances similar to those present here courts deny leave to amend. *See, e.g., Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985) (affirming denial of motion to amend because failure of plaintiff's original attorney to conduct substantive discovery was "simply an insufficient reason for prejudicing [the defendant] by forcing it to proceed to trial, post-discovery, on a new complaint."); *State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 Fed.

9

App'x 36, **1-**2 (2d Cir. 2006) (affirming denial of leave to amend filed after discovery closed where the party's "own filings make it difficult for us to comprehend why they did not file their motion to amend sooner" and where additional claims required different discovery); *White v. Verizon*, No. 5:06–CV–0617 (GTS/GHL), 2009 WL 3335897, at *3 (N.D.N.Y. Oct. 15, 2009) (denying motion to amend because, *inter alia*, it was untimely under the scheduling order, no showing was made to support extending the deadline because plaintiff was well aware of facts upon which new claims were based, and discovery was completed); *Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 182-83 (E.D.N.Y. 2013) (adopting report and recommendation declining to permit amendment because the motion was untimely under the court's scheduling order, there was no adequate explanation given for the delay, and discovery was closed).

### III. Conclusion

Plaintiff's "cross motion" to amend should be denied. It is an improper motion *in limine*, is time barred, this Court lacks jurisdiction over the proposed new claims, and leave to amend is unwarranted in any event. The government's motion *in limine* should be granted.

RICHARD S. HARTUNIAN
United States Attorney

By: /s/ Michael D. Gadarian
Michael D. Gadarian
Assistant United States Attorney
Bar Roll No. 517198
William F. Larkin
Assistant United States Attorney
Bar Roll No. 102013

10